UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTOPHER J. SQUITIERI,

     Plaintiff,

v.

CHRISTOPHER NOCCO,
JEFFERY HARRINGTON,
SHARON FOSHEY, RICHARD
JONES, MARC ERICKSON, JENNIE
JONES, JENNIFER CHRISTENSEN,
and CHRISTOPHER BENNETT

     Defendants.

Case No. 8:19-cv-0906-KKM-AAS

_____/

## ORDER

The Pasco County Sheriff's Office terminated Plaintiff Christopher J. Squitieri following two Internal Affairs Complaints, one of which alleged that he made an inappropriate statement to a female coworker. Although styled as a Racketeer Influenced and Corrupt Organizations Act (RICO) claim, the fourth amended complaint's factual allegations center around Squitieri's employment grievances. His efforts to transform commonplace employment disputes into RICO ones prove unsuccessful. Instead, Squitieri's fourth amended complaint (Doc. 190) fails to state a claim upon which relief can be granted and his proposed fifth amended complaint (Doc. 200-1) does not fare any

better. As a result, the Court grants Defendants' motion to dismiss (Doc. 193), denies Squitieri's motion to amend his fourth amended complaint because the amendment would be futile (Doc. 200), and directs the clerk to enter judgment in Defendants' favor.[1]

## I.    Procedural History

The history of this litigation is both protracted and procedurally painful, yet with shockingly little advancement on the merits. On April 16, 2019, Squitieri and two other plaintiffs filed a complaint against fifteen defendants, all of whom were current or former employees of the Pasco County Sheriff's Office. (Doc. 1.) The complaint alleged one violation of 18 U.S.C. § 1962(c), the civil RICO statute, (Count I) and one violation of Florida law (Count II). (*Id.* at 65–66.) A couple of months later, plaintiffs filed an amended complaint. (Doc. 7.) The amended complaint named twenty plaintiffs—all former employees of the Pasco County Sheriff's Office—and forty-five defendants—all employees of the Paco County Sheriff's Office. (*See id.*) After the case was reassigned to the Honorable Charlene Honeywell (Doc. 106), she denied plaintiffs' emergency motion for a temporary injunction, temporary restraining order, and preliminary injunction. (Doc. 108.)

---

[1] Before the Court is Defendants' motion to dismiss Squitieri's fourth amended complaint (Doc. 193); Squitieri's motion for leave to amend his complaint (Doc. 200); Defendants' response in opposition to Squitieri's motion for leave to amend his complaint (Doc. 201); Squitieri's response in opposition to Defendant's motion to dismiss (Doc. 207); and Defendants' motion for leave to file a reply to Squitieri's response, (Doc. 208). In his motion to amend, Squitieri asked for leave to amend his complaint and, in the alternative, asked the Court to extend the deadline to respond to Defendants' motion to dismiss. (Doc. 200 at 3–4.) Deferring ruling on Squitieri's motion for leave to amend his complaint, the Court directed Squitieri to respond to Defendants' motion to dismiss. (Doc. 206.)

Plaintiffs then filed a second amended complaint on August 7, 2019, after receiving leave from the Court. (Doc. 121.) Defendants moved to dismiss plaintiffs' second amended complaint less than a week later. (Doc. 131.)

During a hearing on defendants' motion to dismiss, Judge Honeywell orally granted-in-part defendants' motion to dismiss plaintiffs' second amended complaint and directed plaintiffs to file a third amended complaint that complied with the Federal Rules of Civil Procedure.[2] (Doc. 171.) In the hearing, Judge Honeywell stated that plaintiffs' complaint is "absolutely" a "shotgun pleading"; "[t]here is no mistake about it." (*Id.* at 8.) She then step-by-step explained the deficiencies in the second amended complaint. (*Id.* at 8–13.) Plaintiffs filed their third amended complaint (Doc. 169), and defendants again moved to dismiss it (Doc. 170).

Earlier, on September 26, 2019, defendants moved for sanctions under Federal Rule of Civil Procedure 11, arguing that the plaintiffs' frivolous lawsuit warranted monetary sanctions. (Doc. 142.) Defendants later filed a supplemental motion under Rule 11 for attorney's fees and costs. (Doc. 176.) On June 19, 2020, Judge Honeywell entered an order deferring ruling on defendants' Rule 11 sanctions motion and supplemental Rule 11 motion until the conclusion of the case. (Doc. 178.)

---

[2] At the hearing, Judge Honeywell also orally denied as moot plaintiffs' amended motion for class certification (Doc. 160) and granted defendants' oral motion to extend the stay of discovery (Doc. 163).

3

Judge Honeywell then ordered plaintiffs to show cause why the Court should not sever the claims of each plaintiff and order plaintiffs with severed claims to proceed in separate actions against the appropriate defendants. (Doc. 184.) After plaintiffs' response to the show cause order (Doc. 185) and a status conference (Doc. 187), Judge Honeywell severed plaintiffs' claims and directed the plaintiffs to pursue relief in separate actions (Doc. 189). The order provided that "[o]n or before December 16, 2020, at least one plaintiff shall file an amended complaint in this action, which shall include at least one claim against the appropriate defendant or defendants." (Doc. 189 at 2 (emphasis omitted).) She required the remaining plaintiffs to bring their claims against the appropriate defendants in separate actions by the same deadline. (*Id.* at 3.)

On December 16, 2020, Squitieri, as the sole plaintiff, filed a fourth amended complaint in this action. (Doc. 190.) This operative complaint—which copies and pastes numerous paragraphs from previous iterations of the pleadings—contains one count, a RICO claim, and names eight defendants, all of whom are "employee[s] of the Pasco County Sheriff's Office" "for all times relevant to [the] complaint." (*Id.* at 3 (emphasis omitted).) On January 6, 2021, Defendants moved to dismiss Squitieri's fourth amended complaint. (Doc. 193.) One day later, the clerk's office reassigned the case to the undersigned. (Doc. 194.) Instead of responding to Defendants' motion to dismiss, Squitieri then sought to file a *fifth* amended complaint or, in the alternative, an extension of time to

respond to Defendants' motion to dismiss. (Doc. 200.) The Court deferred ruling on Squitieri's request to file a fifth amended complaint and directed Squitieri to respond to the motion to dismiss. (Doc. 206.) The Court now grants Defendants' motion to dismiss (Doc. 193) and denies Squitieri's request to file yet another amended complaint.

## II.    Defendants' Motion to Dismiss Squitieri's Fourth Amended Complaint

### a.  Factual Background

In his fourth amended complaint, Squitieri alleges that Defendants "retaliated against [Squitieri] with baseless internal departmental investigations intended to ruin [his] career[]." (Doc. 190 at 6.) Squitieri worked at the Pasco County Sheriff's Office as the Coordinator for New Member Orientations. (*Id.*) Squitieri alleges that a female deputy told him that Defendants were discriminating against her and other female trainers at the Pasco-Hernando Police Academy based on their sex. (*Id.*) Squitieri informed Defendants of the sex discrimination complaint and made a point to assign the female deputy and other women to the "disciplines of training for which they were certified to instruct." (*Id.* at 6–7.)

Around May 2018, Squitieri was promoted to be the Supervisor of Training in the Pasco County Sheriff's Office Training Unit. (*Id.* at 7.) In that new role, he always "ensured that he utilized all trainers, male and female, without prejudice or gender discrimination." (*Id.*) Later that year, the Sheriff's Office conducted an internal affairs investigation into

Defendant Sergeant Richard Jones for a hostile work environment complaint. (*Id.*) Squitieri testified during Defendant Jones's investigation and "truthfully verified the custom and practice of [gender] discrimination." (*Id.* at 8.)

Shortly thereafter, Squitieri alleges that he "was subjected to intentional retaliation through a knowingly false Internal Affairs discourtesy complaint . . . filed by Human Resource Director Melissa Hite, [who alleged] that he made an inappropriate statement to her as his co-worker." (*Id.*) Squitieri alleges that "Defendants intentionally conspired to retaliate against [him] for his sworn testimony in the Internal Affairs investigation of [Defendant Sergeant Jones] . . . and for blowing the whistle on the gender discrimination at the Pasco Sheriff's Office Training Unit." (*Id.*) Specifically, Squitieri alleges that Defendants Sheriff Christopher Nocco and Colonel Jeffery Harrington encouraged Ms. Hite to make a false report against Squitieri in retaliation for his testimony against Defendant Jones. (*Id.* at 8–9.) Squitieri also alleges that Defendant Harrington contacted Anthony Pearn, a favorable witness to Squitieri, and attempted to pressure Pearn into changing his statement. (*Id.*) Ultimately, Squitieri's Internal Affairs Complaint was sustained and he received a two-day suspension. (*Id.* at 9.)

Squitieri alleges that Defendant Jennifer Christensen filed a "second false Internal Affairs Complaint" against him in an attempt to "have him fired." (*Id.*) The second Internal Affairs Complaint alleges that Squitieri (1) falsified official documents; (2) was untruthful;

and (3) conducted himself in a manner unbecoming of an employee at the Pasco County Sheriff's Office. (*Id.*) Although he alleges that he was cleared by an "academic and criminal investigation," Squitieri was still found guilty, purportedly "without evidence of the false allegations against him." (*Id.* at 9–10.) On or around May 1, 2019, Defendants Nocco and Harrington fired Squitieri. (*Id.* at 10.) Squitieri brings this action in response.

### b. Legal Standards

#### i. Failure to State a Claim under Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.*

When considering a motion to dismiss, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). Courts should

limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

### ii. RICO Legal Standard

The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, provides a private right of action for treble damages to "[a]ny person injured in his business or property by reason of a violation" of the Act's criminal prohibitions. § 1964(c); *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 641 (2008). To state a prima facie civil RICO claim under § 1964(c), a plaintiff must establish "three essential elements: first, that the defendant[s] committed a pattern of RICO predicate acts under 18 U.S.C. § 1962; second, that the plaintiff suffered injury to business or property; and, finally, that the defendant[s'] racketeering activity proximately caused the injury." *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 705 (11th Cir. 2014) (citations and punctuation omitted). "If a plaintiff fails to adequately plead any one of these elements, [he] has failed to state a claim upon which relief may be granted, and [his] complaint must be dismissed." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020) (explaining that a private plaintiff suing under the civil provisions of RICO must plausibly allege that the defendants operated or managed an enterprise through a pattern of racketeering activity, which caused injury to the business or property of the plaintiff). Squitieri fails to plead factual allegations

to establish the requisite predicate acts of racketeering activity and fails to plead a pattern of racketeering activity. As such, the Court dismisses his fourth amended complaint for failing to state a claim.

### c. Analysis

#### i. Squitieri fails to plead any predicate acts under 18 U.S.C. § 1962.

To state a civil RICO claim, Squitieri must sufficiently allege racketeering activity. A racketeering act, commonly known as a "predicate act," is statutorily defined and includes a long list of state and federal crimes. *See* 18 U.S.C. § 1961(1). "A plaintiff must put forward enough facts with respect to each predicate act to make it independently indictable as a crime." *Cisneros*, 972 F.3d at 1215 (citation omitted).

Squitieri alleges that Defendants have "engaged in a pattern and practice, through the Pasco [County] Sheriff's Office, of engaging in racketeering activity" through the following predicate acts: (1) retaliating against a witness, victim, or informant under 18 U.S.C. § 1513(e); (2) tampering with a witness, victim, or informant under § 1512(b); mail fraud under § 1341; and wire fraud under § 1343.[3] (Doc. 190 at 4.) For the reasons

---

[3] Squitieri also alleges that Defendants violated Florida's RICO statute. But in pleading his state law claim, Squitieri only cites to section 895.02(8)(b), Florida Statutes—the Florida *criminal* RICO statute. Not only does he fail to sufficiently plead this state law claim, section 895.05(6) limits the relief available to a private person to injunctive relief. *See Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1302 n.18 (11th Cir. 1998) (explaining that section 895.05(6) of the Florida criminal RICO statute "allows a private plaintiff to bring a civil suit for equitable relief only"). Because Squitieri is no longer an employee of the Pasco County Sheriff's Office and has alleged no threat of future injury, he lacks standing to seek injunctive relief under Florida law. *See, e.g., Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 364 (2011) (noting that plaintiffs who were former employees no longer employed by the defendant "lack[ed] standing

discussed below, Squitieri fails to put forward enough facts to sufficiently plead any of these predicate acts.

### 1. Squitieri fails to plead a predicate act under 18 U.S.C. § 1513(e).

Squitieri alleges that Defendants violated § 1513(e) (retaliating against a witness, victim, or informant) when Defendants conspired to ruin Squitieri's reputation and retaliate against Squitieri "for speaking out against the sexist and discriminatory acts committed by several other high ranking members" of the Pasco County Sheriff's Office. (Doc. 190 at 11.) Defendants argue that § 1513(e) is inapplicable because the statute prohibits interference against those testifying in an "official proceeding" and that Squitieri was never involved in an "official proceeding." (Doc. 193 at 13–14.)

Section 1513(e) states: "Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful

---

to seek injunctive or declaratory relief against its employment practices"); *Drayton v. W. Auto Supply Co.*, No. 01-10415, 2002 WL 32508918, at *4 (11th Cir. Mar. 11, 2002) ("[T]his Court has held that former employees who submit no fact that they will be discriminated against in the future lack standing to seek an injunction." (alteration in original) (citing *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1007 (11th Cir. 1997))). Although Squitieri argues in his response to Defendants' motion to dismiss that "[t]he injunctive relief requested under [Florida law] is the correction of the false Internal Affairs reports that continue to damage [Squitieri] by damaging his reputation and ability to find a job in law enforcement" and that he does not seek an injunction based on "employment practices" (Doc. 207 at 3), this argument fails. Squitieri does not mention injunctive relief anywhere in his fourth amended complaint, much less allege facts sufficient to plead the elements entitling him to such relief. Further, neither his fourth amended complaint, (Doc. 193), nor his response, (Doc. 207), contain allegations explaining how an injunction could provide the relief sought (correcting an internal affairs report) or explaining how this relief is connected to any racketeering activity, which is required under Florida's criminal RICO statute.

information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both." The statute later defines "law enforcement officer" as "an officer or employee of the Federal Government, or a person authorized to act for or on behalf of the Federal Government.[4] § 1515(a)(4). Without even considering whether Squitieri sufficiently alleges that he provided truthful information relating to the commission or possible commission of a federal offense (he does not), Squitieri fails to allege that he was retaliated against for providing any information to a law enforcement officer as defined by the statute—i.e., an officer or employee of the federal government. Indeed, all of Squitieri's allegations involve and are directed at county officers at the Sheriff's Office. Accordingly, Squitieri fails to sufficiently plead a predicate act under § 1513(e) upon which a RICO claim could be based.

### 2. Squitieri fails to plead a predicate act under 18 U.S.C. § 1512(b).

Squitieri alleges that Defendants violated § 1512(b) (tampering with a witness, victim, or an informant) by "attempting to pressure [Pearn] to lie in an official report."

---

[4] In full, the statute defines the term:

> (4) the term "law enforcement officer" means an officer or employee of the Federal Government, or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant--
>> (A) authorized under law to engage in or supervise the prevention, detection, investigation, or prosecution of an offense; or
>> (B) serving as a probation or pretrial services officer under this title . . . .

18 U.S.C. § 1515(a)(4).

11

(Doc. 190 at 11.) Defendants argue that § 1512(b) is inapplicable because the statute prohibits interference against those testifying in an "official proceeding." (Doc. 193 at 13–14.) Because Squitieri does not allege facts supporting involvement in an "official proceeding," as statutorily defined, he fails to plausibly state a claim under § 1512(b). (*Id.* at 14.)

Section 1512(b) essentially subjects anyone who knowingly uses—or attempts to use—intimidation, threats, or persuasion to influence, delay, or prevent the testimony of any person in an official proceeding to fine or imprisonment or both.[5] As Defendants point

---

[5] Subsection (b) provides the following:

(b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to--

(1) influence, delay, or prevent the testimony of any person *in an official proceeding*;

(2) cause or induce any person to--

(A) withhold testimony, or withhold a record, document, or other object, *from an official proceeding*;

(B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use *in an official proceeding*;

(C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, *in an official proceeding*; or

(D) be absent from an *official proceeding* to which such person has been summoned by legal process; or

(3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation supervised release, parole, or release pending judicial proceedings;

shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(b) (footnotes omitted) (emphasis added).

out, the statute repeatedly limits its prohibitions against such conduct to an "official proceeding." *See* § 1512(b). And the statute defines "official proceeding" as either (A) "a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury"; (B) "a proceeding before the Congress"; (C) "a proceeding before a Federal Government agency which is authorized by law"; or (D) "a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce." 18 U.S.C. § 1515(a)(1) (defining the term "official proceeding" as it means in §§ 1512 and 1513). In most instances, it applies only to a proceeding before a federal court, Congress, or federal agency.

Without even considering whether Squitieri sufficiently pleads that such intimidations or threats occurred (he does not), Squitieri plainly fails to allege that Defendants attempted to prevent testimony at an official proceeding—the requirement at the heart of the statute. Squitieri alleges that Defendants attempted to "pressure [Pearn] to lie in an official report." (Doc. 190 at 11.) First, it is not obvious how statements in an "official report" constitute testimony, which is required for a § 1512(b) violation. Second,

any internal affairs investigation in the Sheriff's Office or even any related report or statement cannot be construed as meeting the statutory definition of "official proceeding" under § 1515(a)(1). Squitieri alleges no facts in his complaint that even hint at an "official proceeding" that would meet such a statutory definition and thus he fails to plead a predicate act under § 1512(b) on which a RICO claim could be based.

### 3. Squitieri fails to plead predicate acts under §§ 1341 and 1343.

Additionally, Squitieri alleges that Defendants violated §§ 1341 (mail fraud) and 1343 (wire fraud) by supporting and directing the fraudulent internal affairs investigation against Squitieri. (Doc 190 at 10–11.) According to Squitieri, Defendants "knowingly and intentionally created, produced, and supported fraudulent documents to support the retaliatory Internal Affairs Complaint" and "pursu[ed] and produc[ed] additional fraudulent documents in relation to the Internal Affairs Complaint." (*Id.*) Defendants argue that Squitieri must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) for fraud claims, and that Squitieri "fails to allege a single fact that would support a claim for mail or wire fraud, [much] less plead facts with sufficient specificity so as to meet the heightened pleading requirements" of Rule 9(b). (Doc. 193 at 15.) The Court agrees.

To begin, Squitieri fails to plead any allegations that could be construed as stating claims of mail or wire fraud. To establish liability under the federal mail and wire fraud

statutes, a plaintiff must prove: "(1) that defendants knowingly devised or participated in a scheme to defraud plaintiffs, (2) that they did so willingly with an intent to defraud, and (3) that the defendants used the U.S. mails or the interstate wires for the purpose of executing the scheme." *Langford v. Rite Aid of Alabama, Inc.*, 231 F.3d 1308, 1312 (11th Cir. 2000) (citation omitted). Not one paragraph in the fourth amended complaint mentions the United States mail system or any kind of wire, and certainly no paragraph alleges that Defendants used these systems to execute a fraud scheme. Indeed, other than broad allegations about retaliation and a conspiracy to fire Squitieri through a sham internal investigation—which are generalized, conclusory, and insufficient—Squitieri fails to allege a specific fraudulent statement or scheme that Defendants purportedly devised or participated in. To be sure, the fourth amended complaint never even identifies what money or property Defendants attempted to obtain by means of the alleged scheme to defraud. *See Kelly v. United States*, 140 S. Ct. 1565, 1571 (2020) (explaining that 18 U.S.C. § 1343, the wire fraud statute, prohibits deceptive schemes to deprive a victim of money or property); *United States v. Gordon*, 836 F.2d 1312, 1313 (11th Cir. 1988) (per curiam) (explaining that 18 U.S.C. § 1341, the mail fraud statute, prohibits deceptive schemes "involving the deprivation of money or property" (citing *McNally v. United States*, 483 U.S. 350, 352 (1987))).

15

In addition to the basic pleading standards, Squitieri must meet the heightened pleading requirements of Rule 9(b) when alleging predicate acts of fraud. *See Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) ("Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity."); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380 (11th Cir. 1997) (explaining that "the Plaintiffs would be required to replead their RICO claims with the specificity required in Federal Rule of Civil Procedure 9(b)"). "To satisfy the Rule 9(b) standard, RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Ambrosia Coal & Constr. Co.*, 482 F.3d at 1316–17.

Squitieri's mail fraud and wire fraud claims fall short of this standard. Squitieri's fourth amended complaint lumps the Defendants together in his fraud allegations, and the complaint lacks specific allegations about separate Defendants. *See id.* at 1317; *Brooks*, 116 F.3d at 1381. The fourth amended complaint also completely fails to specify the time, place, and manner in which any specific predicate act occurred. *See Brooks*, 116 F.3d at 1381. Considering the Rule 9(b) and the Rule 12(b)(6) pleading deficiencies, Squitieri fails to plead predicate acts under §§ 1341 and 1343 on which a RICO claim could be based.

### ii. Squitieri fails to plead that Defendants committed a pattern of racketeering activity.

Essential to any RICO claim is the basic requirement of establishing a pattern of racketeering activity. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004). "To successfully allege a pattern of racketeering activity, plaintiffs must charge that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature." *Id.* at 1264. "It is by now well established that in order to prove a 'pattern of racketeering activity' it is not sufficient to simply establish two isolated predicate acts." *Id.* "RICO targets *ongoing* criminal activity, rather than sporadic, isolated criminal acts . . . ." *Id.*

Even if Squitieri adequately pleads any predicate acts (he does not), he fails to allege that his predicate acts constituted a pattern of racketeering activity.[6] Indeed, the Court cannot identify two alleged instances of any criminal activity—much less the pattern required by a RICO claim—in Squitieri's operative complaint. Construing his fourth amended complaint in the light most favorable to him, Squitieri essentially alleges that Defendants conspired to retaliate against him for his testimony in connection with

---

[6] In his response in opposition to Defendants' motion to dismiss, Squitieri seems to point to the Pasco County Sheriff's Office's use of an "Intelligence Led Policing" (ILP) initiative to satisfy this element. (Doc. 207 at 6–8). But Squitieri has failed to allege this in his complaint and failed to explain, in both his complaint and his response in opposition to the motion to dismiss, how the ILP program constitutes racketeering activity under 18 U.S.C. § 1962 or how implementation of the ILP program constitutes a pattern of racketeering activity such that it could be the basis for this element.

Defendant Jones's internal affairs investigation. He alleges that Ms. Hite made a false claim and report against him and that Defendant Harrington, at the request or encouragement of Defendant Nocco, tried to pressure a witness for Squitieri's internal affairs investigation to change his statement. Squitieri then alleges that a second false internal affairs complaint was filed against him, which led to his unjust termination. Yet even if the filing of two internal affairs complaints could constitute a pattern—which, as two isolated acts, it does not, *see Jackson*, 372 F.3d at 1264—Squitieri fails to allege how the filing of two internal affairs complaints, even false ones, constitutes racketeering activity, especially considering that he does not allege a predicate act that would address such conduct, as discussed in the section above.

### d.  Conclusion

Because Squitieri fails to adequately allege the existence of any predicate acts or a pattern of racketeering activity—and considering that the failure to plead any one of these elements is fatal to a RICO claim—the Court finds that Squitieri has failed to state a RICO claim in his fourth amended complaint. Accordingly, the Court grants Defendants' motion to dismiss. (Doc. 193.)

## III.   Squitieri's Motion to Amend His Complaint

After Defendants moved to dismiss Squitieri's fourth amended complaint, Squitieri filed a motion for leave to amend his complaint (Doc. 200) and attached his fifth amended

complaint to the motion (Doc. 200-1). The factual allegations in the fifth amended complaint largely mirror the allegations in the fourth amended complaint, although it adds a second count—a First Amendment claim—along with its RICO claim.[7] (*See* Doc 200-1 at 13.) In his motion, Squitieri argues that Defendants' motion to dismiss "exposed pleading flaws and confusion that would be best remedied through the submission of an amended complaint that fully and specifically distinguishes between the RICO claims in which Defendants were acting in their individual capacities, and Section 1983 claims, in which Defendants were acting in their official capacities." (Doc. 200 at 2.) Squitieri contends that "[t]his is precisely the type of circumstance where the Court should freely grant leave to amend in the interest of justice." (*Id.* at 3.) Defendants respond that Squitieri's motion to amend his complaint should be denied based on futility, his repeated failures to cure deficiencies by amendment, and prejudice to Defendants. (Doc. 201 at 5–7.) The Court agrees.

### a. Legal Standard

"Ordinarily, '[i]f the underlying facts or circumstances relied on by a plaintiff may be a proper subject of relief,' . . . leave to amend 'should be freely given.'" *Hall v. United*

---

[7] Squitieri also alleges, for the first time, "Fourth, Fifth and Fourteenth Amendment" claims "against Defendants in their official capacities." (Doc. 200-1 at 2.) The only instance in which Squitieri mentions these claims, however, is in paragraphs 2, 82(c), and 83 of his fifth amended complaint. (*Id.*) Considering Squitieri's total failure to support these claims with any factual allegations and to plead these constitutional claims in any separate, cognizable count, Squitieri fails to state a claim under any theory of constitutional harm.

*Ins. Co. of Am.*, 367 F.3d 1255, 1262 (11th Cir. 2004) (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962) and Fed. R. Civ. P. 15(a)). That said, a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile. *Id.* at 1262 (concluding that the district court did not abuse its discretion when it denied the plaintiff's motion to amend her complaint "on the ground that granting it would be 'futile' because her second amended complaint contained 'no potentially meritorious claims"); *Foman*, 371 U.S. at 182. And "[a] proposed amendment may be denied for futility when the complaint as amended would still be properly dismissed." *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010) (citation and punctuation omitted). Here, because both counts of Squitieri's proposed fifth amended complaint fail to state a claim for relief, the Court denies Squitieri's motion for leave to amend his complaint as futile.

### b. Count I: RICO

Like his fourth amended complaint (Doc. 190), Squitieri alleges a RICO claim in Count I of his fifth amendment complaint (Doc. 200-1). Also, much like his fourth amended complaint, Squitieri's fifth amended complaint fails to state a RICO claim by failing to sufficiently allege facts that show the existence of racketeering activity or a pattern of racketeering activity.

Squitieri does not add any additional factual allegations to his fifth amended complaint that could be construed to state a claim for any of his cited predicate acts.[8] (*Compare* Doc. 190 *with* Doc. 200-1.) He still alleges predicate acts under 18 U.S.C. § 1513(e) without alleging he provided information to a "law enforcement officer" as required and defined by the statute and discussed above; under § 1512(b) without alleging the occurrence of any "official proceeding" as required and defined by the statute and discussed above; and under §§ 1341 and 1343 without providing any allegation that Defendants used the mail or wires, without identifying what money or property they sought to obtain through a fraudulent scheme, and without complying with Rule 9(b)'s specificity requirements for fraud claims. And although Squitieri vaguely alleges that Defendants committed mail and wire fraud by producing false and fraudulent documents to "support the baseless Internal Affairs Complaint," this allegation also appeared in the fourth amended complaint almost verbatim. (*See* Docs. 190 at 6, 200-1 at 11.) It was not sufficient in the fourth amended complaint—neither as a matter of substance, under Rule 9(b)'s heightened pleading requirement, nor under Rule 8(a)(2)'s general pleading requirement—and it is not enough to state a claim of mail or wire fraud in the fifth amended complaint either.

---

[8] Squitieri still alleges that Defendants violated Florida's RICO statute but still only cites the Florida criminal RICO statute (section 895.02(8)(b), Florida Statutes) and does not provide any additional allegations to support his claim. Thus, as discussed in footnote three above, Squitieri's state law claim is still insufficiently pleaded as an initial matter, and Squitieri lacks standing to seek injunctive relief.

And even if Squitieri's fifth amended complaint plausibly alleged a predicate act, the complaint still fails to adequately plead a pattern of racketeering activity. Squitieri has neither made alterations nor added any factual allegations to his fifth amended complaint that addresses this element. (*Compare* Doc. 190 *with* Doc. 200-1.)

Because Squitieri fails to sufficiently allege predicate acts or a pattern of racketeering activity, Squitieri fails to state a RICO claim in his fifth amended complaint. Thus, the Court concludes that allowing another amendment would be futile.

### c.  Count II: First Amendment[9]

In his fifth amended complaint, Squitieri adds, for the first time, a second count: an "alternative claim for constitutional violations committed by Defendants in their official capacities." (Doc. 200-1 at 13.) Squitieri contends that the "Defendants, in their official capacities, punished [Squitieri] for exercising his First Amendment rights in reporting sexual harassment and discriminatory treatment of females." (*Id.*) Defendants argue that Squitieri's speech is not protected under the First Amendment, rendering his proposed amendment futile. (Doc. 201 at 8–9.) Because Squitieri makes his constitutional claim

---

[9] In the last paragraph of Count II, Squitieri also states that Defendants, in their official capacities, violated the rights guaranteed by the Florida and United States Constitution, stating that Defendants "denie[d] equal protection of the law in that the Defendants' conduct was arbitrary, oppressive and capricious and unreasonably required [Squitieri] to submit to controls not imposed on other similarly situated Sheriff's Deputies" and "constitute[d] an unlawful and unauthorized taking of [Squitieri's] job, his 'private property,' without just compensation, without due process of law, and without a public purpose, in violation of the [Fifth] Amendment." (Doc. 200-1 at 18.) But Squitieri never includes any other allegations relating to an equal protection or Fifth Amendment claim. The Court therefore finds that these claims are insufficiently pleaded.

22

against Defendants in their official capacities without alleging any theory of municipal liability, the Court finds that Squitieri fails to state a claim against Defendants in their official capacities.

In his fifth amended complaint, Squitieri explains that, while serving as the Pasco County Sheriff's Office Coordinator for New Member Orientations, a female deputy told Squitieri that the Supervisors at the Pasco-Hernando Police Academy and Defendants Jones and Sergeant Marc Erickson were discriminating against her and other female trainers based on their sex. (Doc. 200-1 at 13–14.) Specifically, they were not permitting the female deputies and other women to serve as instructors in certain training areas and gave those training positions to men. (*Id.* at 14.) Squitieri alleges that the female deputy also told him that she and other women had been subjected to gender discrimination by the male supervisory staff of the Pasco County Sheriff's Office. (*Id.*) In response, Squitieri alleges that he told Defendants Jones and Erickson that he would schedule the female deputy and other women to serve as instructors in the training areas in which they were certified and thereafter scheduled the women to teach those disciplines. (*Id.* at 14–15.) Sometime afterward, Squitieri was promoted to the Supervisor of Training, which gave him supervisory authority over the Pasco County Sheriff's Office Training Unit. (*Id.* at 15.) In this position, Squitieri alleges that he "ensured that he utilized all trainers, male and

female, based solely on ability, without prejudice or gender discrimination." (*Id.* (emphasis omitted).)

Squitieri alleges that after a verbal complaint based on gender discrimination was made against Defendant Jones, Squitieri testified at his internal affairs investigation and stated that he "verified the custom and practice of discrimination" and that he "bl[ew] the whistle on women being discriminated against" because of their sex at the Pasco County Sheriff's Office Training Unit. (*Id.*) Squitieri claims that approximately eight days later, he was subjected to a "knowingly false Internal Affairs discourtesy complaint," which accused him of making an inappropriate statement to his female coworker. (*Id.* at 15–16.) Squitieri received "a two (2) day suspension for a false Complaint that he was not guilty of." (*Id.* at 16–17.) Squitieri alleges that first internal affairs investigation was a product of "Defendants, in their official capacities, intentionally conspir[ing] to deprive [Squitieri] of his constitutional rights by punishing [him] for his sworn testimony in the Internal Affairs investigation of Defendant [Jones] . . . and for blowing the whistle on the gender discrimination at the Pasco Sheriff's Office Training Unit." (*Id.* at 16.) Squitieri additionally alleges that he was ultimately fired for "the violations falsely alleged against him." (*Id.* at 17.)

Over three months later, Squitieri alleges that Defendant Christensen filed a second false internal affairs complaint against him in retaliation with the intention of to "have him

fired." (*Id.* at 17.) On May 1, 2019, Defendants Nocco and Harrington terminated Squitieri. (*Id.*)

In his fifth amended complaint, Squitieri alleges the First Amendment claim against Defendants in their *official* capacities. (*See, e.g.*, *id.* at 13 (bringing a claim for constitutional violations committed by Defendants "*in their official capacities*"; describing the "practices and jurisdiction of Defendants, to the extent carried out in their *official capacities*"; and alleging that "Defendants, *in their official capacities*, punished [Squitieri] for exercising his First Amendment rights" (emphasis added)); *id.* at 16 (alleging that "Defendants, *in their official capacities*, intentionally conspired to deprive [Squitieri] of his constitutional rights" (emphasis added)); *id.* at 18 (alleging that the "conduct of Defendants, *in their official capacities*, . . . conspired to interfere with and deprive [Squitieri] of his constitutional and civil right" and asking for an award of damages "shown to be caused by Defendants *in their OFFICIAL capacities*" (emphasis added))). Squitieri does not make any First Amendment claim against Defendants in their individual capacities, and instead repeatedly discusses Defendants' conduct in their official capacities.

"A suit against a municipal officer in his official capacity is effectively a suit against the government entity that the officer represents." *Lopez v. Gibson*, 770 F. App'x 982, 991 (11th Cir. 2019). Thus, where Defendants are all—at least during the timeframe alleged in the complaint—employees of the Pasco County Sheriff's Office, the suit is effectively an

action against the governmental entity that Defendants represent—here, Pasco County. *Id.*; *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005). A municipality, such as Pasco County, cannot be held liable on a theory of respondeat superior. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978). Instead, municipal liability exists only when a "'policy or custom' of the municipality inflicts the injury." *Cook ex rel. Estate of Tessier*, 402 F.3d at 1116; *see Lopez*, 770 F. App'x at 991 (explaining that "[a] plaintiff suing a municipality can recover under § 1983 only if action pursuant to official municipal policy of some nature caused a constitutional tort." (quotation omitted)). An official policy or custom can manifest in several ways. For example, municipal liability may be premised on a single illegal act by a municipal officer— but only "when the challenged act may fairly be said to represent official policy, such as when that municipal officer possesses final policymaking authority over the relevant subject matter." *Lopez*, 770 F. App'x at 991 (quotation omitted).

Squitieri's fifth amended complaint lacks any theory of municipal liability. (*See generally* Doc. 200-1.) The fifth amended complaint never mentions any kind of official municipal policy or custom and includes no allegation that any Defendant violated his First Amendment rights while acting as a final policymaker. *See Lopez*, 770 F. App'x at 992. Indeed, the fifth amended complaint identifies no Defendant as the primary violator of his First Amendment rights, instead generally alleging that all "Defendants, in their official

capacities, violated [Squitieri's] rights." (Doc. 200-1 at 18); *see Cook ex rel. Estate of Tessier*, 402 F.3d at 1115–16 (explaining that to succeed on her constitutional claim, the plaintiff must establish that "the Sheriff himself, as representative of [the County]" violated his constitutional rights, when the plaintiff sued the county sheriff in his official capacity). When Squitieri fails to allege any municipal liability at the outset, Squitieri simply cannot hold Pasco County liable for Squitieri's employment termination. *See Lopez*, 770 F. App'x at 991 (explaining that where plaintiff alleged that the county sheriff, in his official capacity, violated plaintiff's First Amendment rights, the plaintiff's suit was against the county itself and plaintiff was "therefore attempt[ing] to hold [the county] liable for [the sheriff's] action"). In the face of Squitieri's pleading deficiencies, the Court finds that Squitieri's fifth amended complaint fails to state a First Amendment claim against Defendants in their official capacities. As such, the Court concludes that allowing Squitieri's amendment would be futile.

## IV.   Conclusion

In her own words, Judge Honeywell "rarely" holds hearings on a motion to dismiss. (Doc. 171 at 8.) But she did so here because she "felt so strongly about the condition of [the] Second Amended Complaint." (*Id.*) Needing to "tell [counsel] about [her] concerns with the complaint," she informed counsel in the hearing that he would have "one final opportunity to file a complaint that complies with the rules of civil procedure." (*Id.*)

Squitieri, still retaining the same counsel, has now filed two additional complaints since that hearing, bringing his total number of pleadings to five complaints. And, after quintuple chances, his proposed sixth complaint still fails to state a claim upon which relief may be granted. Squitieri has received more than fair notice of the defects in his pleadings, yet rebuffed all warnings to remedy them. Accordingly, the Court dismisses this case with prejudice. *See Fernau v. Enchante Beauty Prods., Inc.*, 847 F. App'x 612, 623 (11th Cir. 2021); *Coventry First, LLC*, 605 F.3d at 870.

Accordingly, it is **ORDERED**:

(1) Defendants' motion to dismiss Squitieri's fourth amended complaint is **GRANTED**. (Doc. 193.)

(2) The Court **DISMISSES WITH PREJUDICE** Squitieri's fourth amended complaint and **DISMISSES THIS ACTION**. (Doc. 190.)

(3) Squitieri's fifth motion to amend his amended complaint is **DENIED** as futile. (Doc. 200.)

(4) Defendant's motion for leave to file a reply to Squitieri's response is **DENIED AS MOOT**. (Doc. 208.)

(5) The Clerk is directed to enter judgment in favor of Defendants; terminate any pending motions and deadlines; and close the case.

(6) Consistent with the Court's order on June 19, 2020 (Doc. 178), Defendants may advise the Court, by filing a notice by **August 27, 2021**, if they still seek resolution of their Rule 11 motion and supplemental Rule 11 motion.

**ORDERED** in Tampa, Florida, on August 21, 2021.

Kathryn Kimball Mizelle
United States District Judge